IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

      Plaintiff,                                            Criminal No. 22-00210

                                                        Criminal No.  23-0159

      v.                                              ELECTRONICALLY FILED

LIONEL HONG-LONG,

      Defendant.

**Memorandum Order (Findings of Fact/Conclusions of Law) Denying Motion to Suppress (Doc. 68) and Pretrial Motions (Doc. 64, Doc. 65, Doc. 66) and Motion to Dismiss (Doc. 67)**

On August 23, 2022, Defendant was charged  (at Criminal No. 22-00210) with Possession with Intent to Distribute 50 grams or more of Methamphetamine, a Quantity of Cocaine, and a Quantity of Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(viii), and 841(b)(1)(C); and Possession of a Firearm and Ammunition by a Convicted Felon in violation of 18 U.S.C. § 922(g)(1), stemming from a traffic stop conducted by Officer Carl Rech, of the Brentwood Police Department, on a vehicle operated by Defendant on October 12, 2021.  Defendant was also charged (at Criminal No. 23-00159) with Assaulting, Resisting or Impeding Officers in violation of 18 U.S.C. §§ 111(a)(1) and (b) and Possession of a Firearm by a Convicted Felon in violation of 18 U.S.C., on or about June 30, 2023.

On October 28, 2024, Defendant filed a Motion to Suppress evidence concerning the evidence recovered as part of the traffic stop, which was the basis for the charges at Criminal No.

1

22-00210, and other Standard Pretrial Motions for Discovery, to Produce, and for Disclosure of Experts at both criminal case dockets (Doc. 64, 65 and 66), as well as a Motion to Dismiss (Doc. 67), for alleged Speedy Trial violations.  On November 18, 2024, the Government filed an Omnibus Response in Opposition thereto.  (Doc. 70).

On December 17, 2024, this Court held an evidentiary hearing on Defendant's Motion to Suppress, at which Brentwood Police Officer Carl Rech provided testimony concerning traffic stop at issue, on October 12, 2021.  The parties have submitted their respective Proposed Findings of Fact and Conclusions of Law on January 30, 2025, pursuant to Order of Court.  (Doc. 76 and Doc. 77).

Based upon the following findings of the fact and conclusions of law, this Court concludes that the October 12, 2021, traffic stop was lawful because the Ford F-150 pickup truck operated by Defendant was not properly registered and therefore, he was not lawfully operating it on Pennsylvania roads. Officer Rech had reasonable suspicion to initiate a traffic stop on the vehicle being operated by Defendant. Therefore, no Fourth Amendment violation occurred and additionally, suppression of the evidence is also not appropriate relative to the traffic stop under the good faith exception to the warrant requirement.

For these reasons, Defendant's Motion to Suppress will be denied, and the Pretrial Motions will also be denied as moot.

I.     **Findings of Fact**

1.  Officer Rech has been employed by the Brentwood Police Department for 12 years, and in that time, he estimated that he has conducted over 2000 traffic stops, and approximately 800 or 900 stops with pickup trucks.  (Doc. 76, Suppression Hearing Transcript ("HT") at 5-8).

2. As a Brentwood Police Officer, Officer Rech enforces Pennsylvania traffic laws. (HT 6). Officer Rech was trained in Pennsylvania traffic laws from both the police academy and Municipal Police Officer Education and Training Commission yearly updates which includes changes to Pennsylvania traffic laws. (HT 6-7).

3. Officer Rech learned through his 14 years of training that a "truck" tag/license plate is issued by PennDOT for pickup trucks. In Officer Rech's training and experience, properly registered pickup truck license plates have either a "Y" or "Z" in them, and the word "Truck" underneath the license number. (HT 9).

4. Officer Rech was operating a marked patrol vehicle while in uniform and was stopped behind Defendant's vehicle at a red light at Saw Mill Run and Brownsville Road. Defendant's white Ford F-150 pickup truck had a license plate bearing a Pennsylvanian registration LRV1030. However, Officer Rech noticed that the license plate was not a "Truck" plate and it did not have the "Y" or "Z" in it. (HT 9-11).

5. While Officer Rech testified that it was not, in and of itself, a violation of the vehicle code to not have a "Y" or a "Z" in the license plate tag, after he ran the plates through the National Crime Information Center (as he regularly does prior to conducting a traffic stop), and received a "no record found" response, that gave him suspicion that "something was going on." Office Rech credibly testified that at that point, he was reasonably certain that the plate did not belong on the vehicle, leading him to believe that the vehicle may have been stolen. (HT 10-11). Other reasons acknowledged by Office Rech for "no record found," response could have been expired registration, or lack of insurance. (HT 10-11).

6. Officer Rech pulled over the Ford F-150 in the McDonald's parking lot and Defendant was operating the vehicle and sole occupant thereof. Office Rech testified that Defendant was making "furtive" movements, and after he asked Defendant for his license, which he could not find, he then asked Defendant to step out of the car. (HT 10-12).

7. Upon Defendant stepping out of the car, a small bag of marijuana fell to the ground, at which point, Defendant was taken into custody by Officer Rech (HT 12-13).

8. Defendant was handcuffed and placed into the rear of Officer Rech's patrol unit, and Officer Rech determined that Defendant had an active felony arrest warrant in the City of Pittsburgh. (HT 13-14).

9. Officer Rech felt the patrol unit shaking and heard a loud noise, and observed that Defendant had a firearm by his feet. (HT 14). A review of the dash camera footage showed that Defendant removed a firearm from between his butt cheeks, while Defendant was handcuffed, he threw the firearm in front of himself, and then tried to kick it under the seat. (HT 15).

10. Originally, the search of Defendant's vehicle was a verbal consent search, which was changed to a probable cause search, and it resulted in the recovery of a quantity of drugs from the vehicle. (HT 15).

11. A Police Report from this incident was presented at the hearing and filed as Government Exhibit 1, and Defense Exhibit A, the State Court Docket Sheet was also presented at the hearing. Neither were admitted into evidence, but Officer Rech testified credibly that Defendant was arrested on October 12, 2021, based upon the arrest warrant issued by the City of Pittsburgh.

**II.     Conclusions of Law**

When a law enforcement officer witnesses a violation of traffic laws, he or she may lawfully stop the vehicle in question.  *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977).   In order for a traffic stop, which is merely an investigative detention, to be lawful under the Fourth Amendment, it must be supported by reasonable suspicion that a traffic violation occurred.  *United States v. Green*, 897 F.3d 173, 178 (3d Cir. 2018).   A finding of reasonable suspicion is justified, where, as here, the officer who initiates the traffic stop has "'specific, articulable facts' to believe that an individual has violated the traffic laws." *United States v. Delfin-Cola*, 464 F.3d 392, 397 (3d Cir. 2006).  Upon review in the context of a Motion to Suppress, this Court must determine whether the "rational interferences from those facts reasonably warrant [the] intrusion." *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868 (1968).

In this case, Officer Rech had reasonable suspicion, supported by "specific, articulable facts'" based upon the totality of the circumstances, to believe to that the vehicle driven by Defendant, violated the traffic laws in question (as all motor vehicles on Pennsylvania roadways are required to be registered).  *United States v. Sokolow*, 490 U.S. 1, 8, 109 S.Ct. 1581 (1981); *United States v. Delfin-Cola*, 464 F.3d 392, 397 (3d Cir. 2006).  The specific, articulable facts that Officer Rech observed were that the pickup truck driven by Defendant did not have truck plates, the license number did not begin with an "Y" or "Z", and critically, the NCIC check he performed returned a result of "no record found."  The totality of these circumstances demonstrate that Officer Rech had reasonable suspicion to believe that the registration plate displayed on the Ford F-150 was not registered to that vehicle or to any other vehicle, and thus

either the Ford F-150 was not registered in Pennsylvania or the displayed registration plate was fraudulently affixed to the Ford F-150, in violation of 75 Pa.C.S.A. §§ 1301(a), 7214.[1]

Although Pennsylvania law does not specifically require that trucks have a registration plate beginning with "Y" or "Z" or have "Truck" embossed on the bottom of the registration plate, Pennsylvania law does set forth registration criteria followed by the Pennsylvania Department of Transportation as listed above.  Officer Rech's training and experience as it relates to PennDOT "Truck" registrations informed his legitimate concerns that the registration was inadequate, which prompted him to run the NCIC search, and returned the "no record found."  Therefore, Office Rech had specific, articulable facts to believe that the Ford F-150 was operating in violation of a Pennsylvania traffic law.  The Court concludes that Officer Rech had reasonable suspicion to conduct the traffic stop on the Ford F-150 being operated by Defendant.

Defendant alternatively argues that although the *Terry* stop may have been lawful at is inception, it became "unreasonable" in scope or duration at some later time.  *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).  According to Defendant, Officer Rech's actions extended the stop

---

[1] 75 Pa.C.S.A. § 1301(a) – Driving Unregistered Vehicle Prohibited: No person shall drive or move and no owner or motor carrier shall knowingly permit to be driven or moved upon any highway any vehicle which is not registered in this Commonwealth unless the vehicle is exempt from registration. Additionally, displaying a registration plate not registered to a specific motor vehicle is in violation of 75 Pa.C.S.A. § 7214 – Fraudulent Use or Removal of Registration Plate: A person who either removes a registration plate from a vehicle or affixes to a vehicle a registration plate not authorized by law for use on the vehicle, with intent to conceal or misrepresent the identity of the vehicle or its owner, is guilty of a summary offense punishable by a fine of not less than $100 nor more than $500 or imprisonment for not more than 90 days, or both. Under Pennsylvania law, police officers are given the authority to seize registration plates in limited circumstances  75 Pa.C.S.A. § 1334.1 provides: A police officer or an employee of the department authorized to enforce the provisions of Chapter 49 (relating to size, weight and load) may seize a registration plate that appears in departmental records as suspended, revoked, canceled, stolen, inactive or issued to a vehicle other than the vehicle on which it is displayed.

beyond its lawful purpose without independent reasonable suspicion, and therefore violates the Fourth Amendment. Simply stated, this Court disagrees for the reasons set forth hererinabove.

Additionally, the "good faith exception" applies to the actions of Officer Rech, and the "exclusionary rule" does not apply. The "exclusionary rule" was created to deter Fourth Amendment violations where the Government seeks to admit evidence collected pursuant to an illegal search or seizure. However, even when the Government violates the Fourth Amendment, improperly obtained evidence will not be excluded when it was pursued in good faith.

Moreover, as the Government argues, and this Court agrees, the facts of this case reveal that Office Rech acted with an objectively reasonable, good-faith belief that his conduct was lawful, and therefore, the "good faith exception" is applicable here. *United States v. Katzin*, 769 F.3d 163, 171 (3rd Cir. 2014). Exclusion of evidence has always been a last resort, not a first impulse. *Id* at 170 quoting *Hudson v. Michigan*, 547 U.S. 586 (2006). Exclusion is appropriate only where law enforcement conduct is sufficiently deliberate, reckless, or grossly negligent, such that deterrence is effective and sufficiently culpable that deterrence outweighs the cost of suppression. *Id.* (citations and internal quotations omitted). Therefore, because Officer Rech acted in an objectively reasonable manner, and in good faith, and because exclusion of the evidence will not have the desired deterrent effect intended by the exclusionary rule, the exclusionary rule does not apply in this case.

As for the standard "boilerplate" Motions for Discovery (Doc. 64), for Production (Doc. 65), and for Expert Witness Disclosure (Doc. 66), consistent with the Government's Omnibus Response that it has provided the defense all evidence in its possession in this case, and fully recognizes its discovery and disclosure obligations under all the applicable bodies of law, these Motions will be denied as premature/moot.

Defendant further files a Motion to Dismiss (Doc. 67 at Criminal No. 22-00210), on the basis that because Defendant was not charged for his criminal conduct that occurred on October 12, 2021, until August 23, 2022, that the Speedy Trial Act, 18 U.S.C. Section 3161[2] has been violated. Defendant contends that he was not indicted within 30 days of the offense, and pursuant to 18 U.S.C. Section 3161(b), the Indictment should be dismissed. As the Government counters, and this Court agrees, the Speedy Trial Act relates back to the date the Defendant is arrested in connection with such charges, not to the events that form the basis for the arrest. The Government has been consistent that Defendant was not arrested in relationship to the recovery of controlled substances and the firearm on October 12, 2021. Instead, he was arrested on that date relative to an outstanding arrest warrant from the City of Pittsburgh. No testimony provided at the Suppression Hearing is inconsistent with the Government's position in this regard.

The issue raised by Defendant in the context of the Motion to Suppress, of whether the investigatory stop was lawful (which the Court has ruled that it was), is not implicated as the basis for his arrest, which was for an outstanding warrant. Therefore, no Speedy Trial Act violation has occurred as Defendant was charged on August 22, 2022, and was not arrested relative to that formal charge until June 30, 2023, and Defendant's Speedy Trial Right has not been violated and the clock has been properly tolled since that date.

---

[2] 18 U.S.C. Section 3161 states that: (b) Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges. If an individual has been charged with a felony in a district in which no grand jury has been in session during such thirty-day period, the period of time for filing of the indictment shall be extended an additional thirty days.

Finally, Defendant has filed a Pro Se Letter Motion (Doc. 67 at Criminal No. 23-00159) regarding the Court's procedure for swearing in a witness in a criminal proceeding. The Court hereby denies Defendant's Pro Se Motion because Defendant is represented by able counsel and the Court will not accept Pro Se legal filings.

SO ORDERED, this 2$4^{th}$ day of February, 2025.

s/Arthur J. Schwab
United States District Judge

cc:    All ECF-registered counsel of record